United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                          San Francisco Division

11   CARL RENOWITZKY,                          No. 3:15-cv-01016-LB

12            Plaintiff,                        **ORDER GRANTING THE
                                                DEFENDANTS' MOTION FOR
13        v.                                    JUDGMENT ON THE PLEADINGS**

14   SHELLPOINT MORTGAGE SERVING, A            [Re: ECF Nos. 9, 14, 15]
     DIVISION OF E PENN FINANCIAL, LLC.,
15   BANK OF AMERICA N.A., THE BANK OF
     NEW YORK MELLON FKA THE BANK
16   OF NEW YORK AS TRUSTEE FOR THE
     BENEFIT OF THE CERTIFICATE
17   HOLDERS OF THE CWABS INC., ASSET-
     BACKED CERTIFICATES, SERIES 2006-
18   SD4 BY ITS ATTORNEY IN FACT BANK
     OF AMERICA, N.A., SUCCESSOR BY
19   MERGER TO BAC HOME LOANS
     SERVICING, LP FKA COUNTRYWIDE
20   HOME LOANS SERVICING LP.; ALL
     PERSONS UNKNOWN CLAIMING ANY
21   LEGAL OR EQUITABLE RIGHT, TITLE,
     ESTATE, LIEN OR INTEREST IN THE
22   PROPERTY DESCRIBED IN THE
     COMPLAINT ADVERSE TO PLAINTIFF'S
23   TITLE, OR ANY CLOUD ON PLAINTIFF'S
     TITLE THERETO; AND DOES 1-100,
24   INCLUSIVE,

25            Defendants.
     _____/

26                          **INTRODUCTION**

27       The plaintiff Carl Renowitzky, who is representing himself, sued the defendants for their alleged

28   improprieties during foreclosure proceedings on his property in San Anselmo, California. (Compl.,

ORDER (No. 3:15-cv-01016-LB)

ECF No. 1-1.)[1] The defendant Bank of America moved for judgment on the pleadings on the grounds that (1) collateral estoppel precludes the action because the Marin Superior Court necessarily decided Mr. Renowitzky's claims, (2) the doctrine of judicial estoppel forecloses Mr. Renowitzky from raising the claims because he did not disclose them on his bankruptcy petition, and (3) the claims fail as a matter of law. (Motion, ECF No. 9.) The other defendants joined the motion. (ECF Nos. 14, 15.) All parties consented to the undersigned's jurisdiction. (ECF Nos. 7, 8, 17, 24.) The court finds the case suitable for determination without oral argument under Civil Local Rule 7-1(b) and grants the defendants' motion for judgment on the pleadings.

## STATEMENT

The facts are taken from the complaint and undisputed (and relevant) facts in public records contained in the parties' separate requests for judicial notice. *See* Fed. R. Evid. 201; *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

## I. THE LOAN

Mr. Renowitzky and his wife bought real property in 2006 at 30 Oak Knoll Drive in San Anselmo, California. (Compl., ECF No. 1-1 at ¶ 1.) They financed the purchase with a mortgage loan from Argent Mortgage Company in the amount of $975,000. (*Id.* at ¶ 2; 4/7/06 Deed of Trust ("DOT"), ECF No. 9-1 at 9.) The Deed of Trust lists Town and Country Title Services as the trustee. (4/7/06 DOT, ECF No. 9-1 at 9.)

## II. THE FORECLOSURE AND STATE-COURT PROCEEDINGS

### A. The First Notice of Default and Rescission of the Notice

On May 14, 2007, Recontrust Company, Inc. ("Recontrust") (as the trustee) recorded a Notice of Default. (Notice of Default ("NOD"), ECF No. 9-1 at 28-29.) (It lists as a point of contact the Bank of New York Mellon as Trustee for the Noteholders CWABS Inc. Asset-backed Notes Certificates, Series 2006-SD4006-SD4 c/o Countrywide Home Loans Inc). (*Id.* at 29.) Recontrust rescinded the Notice of Default on May 31, 2007. (Notice of Rescission, ECF No. 9-1 at 31.)

---

[1]  Citations are to the Electronic Case File ("ECF"); pin cites are to the ECF-generated case numbers at the tops of documents.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

**B. Argent Assigns its Interest to Countrywide**

By assignment recorded on October 15, 2007, Argent assigned its interest in the Oak Knoll property to Countrywide Home Loans, Inc. ("Countrywide"). (Corporation Assignment of Deed of Trust, ECF No. 9-1 at 33.) A notary stamp reflects that Argent's agent signed the assignment personally. (*See id.*)

**C. The Second Notice of Default**

Recontrust recorded a second Notice of Default on January 29, 2008. (NOD, ECF No. 9-1 at 35.)

**D. Mr. Renowitzky's First Lawsuit**

Mr. Renowitzky sued Countrywide, Argent, Town and Country Title, First American Title (which signed as attorney-in-fact for Recontrust on the two NODs), and Recontrust on May 2, 2008, in state court claiming breach of contract, negligent misrepresentation, fraud, violation of California Business and Professions Code § 17200, and unjust enrichment based on the foreclosure proceedings. (5/20/08 Compl., ECF No. 9-1 at 41-51.) The court's register of actions reflects that on January 26, 2009, Mr. Renowitzky asked for time to find a lawyer after the defendants filed a motion for judgment on the pleadings. (Register, ECF No. 9-2 at 36.) The court dismissed the case with prejudice on February 13, 2009. (*Id.*)

**E. Recontrust's June 2008 Notice of Sale**

On June 3, 2008, Recontrust recorded a Notice of Trustee's Sale. (Notice, ECF No. 9-2 at 38.) On July 18, 2008, Mr. Renowitzky conveyed his interest in the property to Michelle Renowitzky. (Grant Deed, ECF No. 9-2 at 40.)

**F. The Foreclosure Proceedings and Assignments in 2011**

On May 11, 2011, Recontrust (through Countrywide Home Loans) filed a Notice of Trustee's Sale. (Notice, ECF No. 9-2 at 43.) On May 12, 2011 (recorded on May 17, 2011), Countrywide assigned the deed of trust and mortgage loan to the defendant "Bank of New York Mellon Fka the Bank of New York not in its individual capacity but solely as Trustee for the Benefit of the Certificate Holders of the CWABS Inc., Asset-backed Certificates, Series 2006-SD4." (Corporation Assignment, ECF No. 9-2 at 47.) A notary stamp reflects that Countrywide's agent signed the assignment personally. (*See id.*)

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**G. Mr. Renowitzky's Chapter 7 Bankruptcy Filing**

Mr. Renowitzky filed for Chapter 7 bankruptcy on June 9, 2011. (Petition, ECF No. 9-2 at 49.)
The schedules shows that he resided at 2132 6th Street, Berkeley, California, and that he would
surrender the Oak Knoll property to his creditors Bank of America and Mark McDaniel. (*Id.* at 49;
ECF No. 9-3 at 22-23.) Mr. Renowitzky did not disclose any legal claims against the defendants in
his bankruptcy schedules, which directed him to list all of his claims and other personal property.
(Schedule B, ECF No. 9-2 at 57-59.) (The bankruptcy docket reflects the filing of amended
schedules D, E, F, and I (*see* Bankruptcy Docket, ECF No. 9-3 at 36), but the required disclosure of
claims is on schedule B. He also filed an amended statement of financial affairs; that is not relevant
either because on it he is obliged only to list lawsuits and administrative proceedings where he was a
party in the past year.)

On October 7, 2011, the bankruptcy trustee issued Mr. Renowitzky a discharge. (Discharge, ECF
No. 9-3 at 41.)

**H. The 2012-2013 Foreclosure Proceedings and 2013 State Lawsuit**

By substitution of trustee recorded on May 9, 2012, Recontrust formally substituted in as trustee.
(Substitution, ECF No. 9-3 at 44.) On May 9, 2012, Recontrust recorded a Notice of Trustee's Sale.
(Notice, ECF No. 9-3 at 64.) Recontrust recorded another Notice of Trustee's Sale on April 29,
2013. (Notice, ECF No. 9-3 at 69.)

Mr. Renowitzky filed a state lawsuit on May 8, 2013 against Recontrust to set aside the trustee's
sale, essentially claiming that during the process of securitization, it did not maintain an unbroken
chain of assignments and thus was not a lawful owner. (5/8/13 Compl., ECF No. 9-3 at 47-48.) He
also alleged that he never signed a note naming MERS (the Mortgage Electronic Registration
System) as a trustee and was never informed of any transfer to it. (*Id.* at 49-50.) On June 12, 2013,
Recontrust filed its demurrer, claiming (among other things) judicial estoppel based on the
bankruptcy petition, res judicata, and a time bar. (Demurrer, ECF No. 9-3 at 73-82; *id.*, ECF No. 9-4
at 2-10.)

Recontrust recorded a rescission of the Notice of Trustee's Sale on July 9, 2013. (Notice, ECF
No. 9-4 at 12.) It then assigned the deed of trust and mortgage loan to the defendant "Bank of New

York Mellon Fka the Bank  of New York not in its individual capacity but solely as Trustee for the Benefit of the Certificate Holders of the CWABS Inc., Asset-backed Certificates, Series 2006-SD4." (Corporation Assignment, ECF No. 9-4 at 16.)

On September 4, 2013, the state court sustained Recontrust's demurrer without leave to amend. (Order, ECF No. 9-4 at 20-21; Judgment, ECF 9-4 at 26.)

Recontrust filed a Notice of Trustee's Sale on December 30, 2013, setting the sale for January 22, 2014. (Notice, ECF No. 9-4 at 29.) On January 21, 2014, Michelle Renowitzky conveyed the property back to Mr. Renowitzky. (Grant Deed, ECF No. 9-4 at 33-34.)

**IV. THE 2014 LAWSUIT**

Mr. Renowitzky filed this case in Marin Superior Court on September 16, 2014, challenging the foreclosure of the Oak Knoll property and asking for damages, declaratory relief, and a cancellation of the sale. (Complaint, ECF No. 1-1.) The complaint has the following claims: (1) conspiracy; (2) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (3) aiding and abetting; (4) fraud; (5) wrongful foreclosure; (6) unfair practices in violation of California Business and Professions Code § 17200; (7) violation of the California Homeowners Bill of Rights (the "HBOR" claim); (8) violation of the Rosenthal Fair Debt Collection Practices Act; and (9) intentional infliction of emotional distress. (*See id.*) He alleges a practice of robosigning. (*See, e.g., id., ¶¶ 16, 114, 131.*) He alleges defects in the assignments to the successor trustees, essentially challenging the securitization of his loan. (*See, e.g. id. ¶¶ 17-35.*) The result, he alleges, is that the defendants are not the lawful owners of the loan and have no right to foreclose. (*See id. ¶¶ 25-35.*)

On March 4, 2015, the defendants removed the case to federal court and then filed the motion for judgment on the pleadings. (Notice of Removal, ECF No. 1; Motion, ECF No. 9.) Mr. Renowitzky opposed the motion. (Opposition, ECF No. 25.)

**ANALYSIS**

**I. LEGAL STANDARD**

After the pleadings are closed "but early enough not to delay trial," a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog," because the motions are "functionally

1   identical." *Dworkin v. Hustler Magazine, Inc*., 867 F.2d 1188, 1192 (9th Cir. 1989). A Rule 12(c)

2   motion may thus be predicated on either: (1) the lack of a cognizable legal theory; or (2) insufficient

3   facts to support a cognizable legal claim. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699

4   (9th Cir. 1990). When considering a motion to dismiss under Rule 12(c), the court "must accept all

5   factual allegations in the complaint as true and construe them in the light most favorable to the

6   non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "A judgment on the

7   pleadings is proper if, taking all of [plaintiff]'s allegations in its pleadings as true, [the defendant] is

8   entitled to judgment as a matter of law." *Compton Unified School Dist. v. Addison*, 598 F.3d 1181,

9   1185 (9th Cir. 2010).

10   Although a court generally is confined to the pleadings on a Rule 12(c) motion, "[a] court may. .

11   . consider certain materials – documents attached to the complaint, documents incorporated by

12   reference in the complaint, or matters of judicial notice – without converting the motion to dismiss

13   into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## II. APPLICATION

15   The defendants move for judgment on the pleadings on three grounds: (A) res judicata based on

16   the state court's dismissal of Mr. Renowitzky's case with prejudice; (B) judicial estoppel based on

17   Mr. Renowitzky's failure to disclose his claims against the defendants on his schedules to his

18   bankruptcy petition, and (C) Mr. Renowitzky's lack of standing to challenge the securitization of his

19   loan. (Motion, ECF No. 9 at 14-29.) The court grants the motion because the state court's judgment

20   precludes this case, and Mr. Renowitzky lacks standing to challenge the securitization of his

21   mortgage loan. The court does not reach the judicial-estoppel argument.

### A. Preclusive Effect to State-Court Judgment

23   A defendant may raise the affirmative defense of res judicata by way of a motion to dismiss

24   under Rule 12(b)(6). *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). Under 28 U.S.C.

25   § 1738, federal courts are required to give full faith and credit to state court judgments. *San Remo*

26   *Hotel, L.P. v. City & Cnty. of San Francisco*, 545 U.S. 323, 336 (2005); *Brodheim v. Cry*, 584 F.3d

27   1262, 1268 (9th Cir. 2009). To determine the preclusive effect of a state-court judgment, federal

28   courts look to state law. *Heinrichs v. Valley View Dev.*, 474 F.3d 609, 615 (9th Cir. 2007).

United States District Court

For the Northern District of California

1    While the United States Supreme Court uses the term "res judicata" to refer collectively to claim

2  preclusion and issue preclusion, *see, e.g., Taylor v. Sturgell*, 553 U.S. 880, 892 (2008), the

3  California Supreme Court generally uses the term "res judicata" to refer to claim preclusion, and the

4  term "collateral estoppel" to refer to issue preclusion, *see Boeken v. Philip Morris USA, Inc*., 48 Cal.

5  4th 788, 797 (Cal. 2010) (distinguishing between the two "aspects" that compose California law's

6  preclusion doctrine).

7      "As generally understood, '[t]he doctrine of res judicata gives certain conclusive
     effect to a former judgment in subsequent litigation involving the same controversy.'
8      [Citation.] The doctrine 'has a double aspect.' [Citation.] 'In its primary aspect,'
     commonly known as claim preclusion, it 'operates as a bar to the maintenance of a
9      second suit between the same parties on the same cause of action. [Citation.]'
     [Citation.] 'In its secondary aspect,' commonly known as collateral estoppel, '[t]he
10     prior judgment . . . "operates"' in 'a second suit . . . based on a different cause of
     action . . . "as an estoppel or conclusive adjudication as to such issues in the second
11     action as were actually litigated and determined in the first action." [Citation.]'
     [Citation.] 'The prerequisite elements for applying the doctrine to either an entire
12     cause of action or one or more issues are the same: (1) A claim or issue raised in the
     present action is identical to a claim or issue litigated in a prior proceeding; (2) the
13     prior proceeding resulted in a final judgment on the merits; and (3) the party against
     whom the doctrine is being asserted was a party or in privity with a party to the prior
14     proceeding. [Citations.]'" (*People v. Barragan* (2004) 32 Cal. 4th 236, 252–253, 9
     Cal. Rptr. 3d 76, 83 P.3d 480.)

15

16    Here, at least the 2013 state-court judgment is a final judgment on the merits, and the defendants

17  assert the claim against Mr. Renowitzky, who was a party in the state-court case. The issue then is

18  whether Mr. Renowitzky has stated a cause of action different from those in his state lawsuit. *See*

19  *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982). Among the factors a court

20  considers in answering this question are:

21     (1) whether rights or interests established in the prior judgment would be destroyed or
     impaired by prosecution of the second action; (2) whether substantially the same evidence is
22     presented in the two actions; (3) whether the two suits involve infringement of the same
     right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

23

24  *Id*. at 1201-02. The last factor is the most important. *Id*. at 1202.

25    Here, even if (liberally construing his complaint) Mr. Renowitzky alleges new conduct or asserts

26  new legal theories, his claims are based on the same nucleus of common facts, and he could have

27  brought them in the earlier action. *See Tahoe-Sierra Pres. Council, Inc.*, 322 F.3d 1064, 1078 (9th

28  Cir. 2003). And in both cases, Mr. Renowitzky alleges a violation of his primary right against

wrongful foreclosure. There is identity of claims between this case and the state-court lawsuit. Res judicata applies and bars this lawsuit.

## B. Mr. Renowitzky Lacks Standing to Challenge the Securitization of his Loan

Bank of America also argues that Mr. Renowitzky lacks standing to challenge the securitization of his loan. (Motion, ECF No. 9 at 20-28.) The court agrees.

> "Ninth Circuit district courts have come to different conclusions when analyzing a plaintiff's right to challenge the securitization process . . . ." *Johnson v. HSBC Bank USA, N.A.,* No. 3:11–cv–2091-JM–WVG, 2012 WL 928433, at *2 (S.D. Cal. March 19, 2012) (collecting cases). The majority position is that plaintiffs lack standing to challenge noncompliance with a pooling and service agreement or other similar agreement unless they are parties to or third-party beneficiaries of the agreement. *See Aniel v. GMAC Mortg., LLC,* No. C 12–04201 SBA, 2012 WL 5389706, at *4 (N.D. Cal. Nov. 2, 2012) (collecting cases); *Almutarreb v. Bank of New York Trust Co., N.A.,* No. C–12–3061 EMC, 2012 WL 4371410, at *2 (N.D. Cal. Sept. 24, 2012) (disagreeing with *Vogan* and finding that because plaintiffs were neither parties nor third party beneficiaries to pooling and service agreement, they lacked standing to challenge whether loan transfer occurred outside time limits in agreement); *Madlaing v. JPMorgan Chase Bank, N.A.,* No. CV F 12–2069 LJO SMS, 2013 WL 2403379, at *8 (E.D. Cal. May 31, 2013) (plaintiff lacked standing to enforce pooling and service agreement because he was neither party to nor intended third-party beneficiary of agreement); *but see Vogan v. Wells Fargo Bank, N.A.,* No. 2:11–CV–02098–JAM–KJN, 2011 WL 5826016, at *7 (E.D. Cal. Nov. 17, 2011) (allowing UCL claim when plaintiffs alleged that assignment was executed after the closing date of securities pool, "giving rise to a plausible inference that at least some part of the recorded assignment was fabricated"). The court follows the majority approach.

> Plaintiff urges the court to follow *Glaski v. Bank of America, N.A.,* 218 Cal. App. 4th 1079 (2013), in which the court held that a borrower may have standing to challenge a foreclosure where the note holder acquired the note from a party who had been assigned it in a void transaction (under New York law). *Id.* at 1095. There, the note was assigned to a securitized trust after the date that the trust was closed for purposes of acquiring additional assets. *Id.* The trust in *Glaski* was formed under New York law, which the court interpreted to confer standing in the specific situation. *See id.* at 1097. The court noted that "some federal district courts sitting in California have rejected the post-closing date theory of invalidity on the grounds that the borrower does not have standing to challenge an assignment between two other parties." *Id.* at 1098. The court distinguished those cases, however, because "they do not apply New York trust law to the operation of the securitized trusts in question." *Id.* at 1098.

> Every court in this district that has evaluated *Glaski* has found it unpersuasive. *See Zapata v. Wells Fargo Bank, N.A.,* No. C 13-04288 WHA, 2013 WL 6491377, at *2 (N.D. Cal. Dec. 10, 2013) (collecting cases). The court follows those cases and concludes that plaintiffs lack standing to challenge noncompliance with a PSA in securitization unless they are parties to the PSA or third party beneficiaries of the PSA. Accordingly, to the extent Plaintiff's claims are based on violation of a PSA, the court dismisses them with leave to amend facts showing that Plaintiff is a party to or third-party beneficiary of that PSA.

*Rubio v. U.S. Bank, N.A.*, No. C 13–05752 LB, 2014 WL 1318631, at \*7-8 (N.D. Cal. Apr. 1, 2014). Here, Mr. Renowitzky is not a party to or a third-party beneficiary of the PSA, and the court cannot see how he would be. Accordingly, the court concludes that he lacks standing to challenge the securitization of his loan. *See id.; see also Bergman v. Bank of America*, No. C 13-00741 JCS, 2013 WL 5863057, at \*29 (N.D. Cal. Oct 23, 2013) (dismissing RICO claims with prejudice and rejecting a *Glaski* securitization argument).

**C. Judicial Estoppel**

Federal law on judicial estoppel governs cases in federal courts regardless of whether they involve state law claims. *Rissetto v. Plumbers and Steamfitters Local* 343, 94 F.3d 597, 603 (9th Cir. 1996).  It is an equitable doctrine that prevents a party from benefitting by taking one position but then later seeking to benefit by taking a clearly inconsistent position. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Judicial estoppel may be invoked by the court at its discretion. *Morris v. California*, 966 F.2d 448, 453 (9th Cir. 1992). In the bankruptcy context, where the plaintiff fails to disclose potential claims in his bankruptcy schedules and thereafter sues on them, the invocation of the doctrine serves to protect the bankruptcy system, which depends on full and honest disclosure by debtors of all their assets. *Hamilton*, 270 F.3d at 785.

The court does not reach the issue because it grants the motion on other grounds.

## CONCLUSION

The court grants the motion for judgment on the pleadings and dismisses the case with prejudice. This disposes of ECF Nos. 9, 14, and 15.

**IT IS SO ORDERED.**

Dated: August 14, 2015

_____
LAUREL BEELER
United States Magistrate Judge